```
Zachary Bryant (WSBAN 50423, Appearing Pro Hac Vice)
(zhb@mainstaylaw.com)
Mainstay Law, LLC
336 36th Street, #706
Bellingham, WA 98225
T (360) 933-1612

Michael S. Magnuson (SBN 66680)
(mike@magnusonlaw.com)
Molly J. Magnuson (SBN 229444)
Law Offices of Michael S. Magnuson
13215 Penn Street, Suite 205
Whittier, CA 90602
T (562) 464-1140
Attorneys for Plaintiff
```

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAINING WANG, an individual,<br><br>Plaintiff,<br><br>v.<br><br>RICHGROUP INVESTMENT, L.P, a California limited partnership, 168 AMERICA REGIONAL CENTER, LLC, a California limited liability company, THE ONE ASSET MANAGEMENT, LLC, a California limited liability company, THE ONE INVESTMENTS, LLC, a California limited liability company, GE PROPERTY MANAGEMENT, INC., a California corporation, and KEY WEST FINANCIAL SERVICES, INC., a California corporation,<br><br>Defendants. | CASE NO. 2:20-CV-651<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT**<br>2. **VIOLATIONS OF THE SECURITIES & EXCHANGE ACT OF 1934 [17 C.F.R. 240.10B-5];**<br>3. **NEGLIGENT MISREPRESENTATION; and**<br>4. **BREACH OF FIDUCIARY DUTY**<br><br>**JURY TRIAL WAIVED** |

COMPLAINT - 1

**JURISDICTION AND VENUE**

1. Pursuant to 15 U.S.C. § 78a, the Court has jurisdiction over the claims for relief asserted herein which arise under and are brought pursuant to Sections 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5. This Court also has jurisdiction over the claims for relief by virtue of diversity jurisdiction under 28 U.S.C. § 1332.

2. Venue in this District is proper under 28 U.S.C. §§ 1391(a) and (c) because a substantial part of the activities and events occurred within this district and the Defendants are conducting business, have principal office locations and/or are residents within this district.

**PARTIES**

3. HAINING WANG ("Plaintiff") is an individual and is a citizen of the People's Republic of China where she maintains her residence.

4. RICHGROUP INVESTMENT, L.P. is a California limited partnership, with its principal place of business located in Alhambra, California.

5. 168 AMERICA REGIONAL CENTER, LLC is a California limited liability company with its principal place of business in Covina, California.

6. THE ONE ASSET MANAGEMENT, LLC is a California limited liability company with its principal place of business in Alhambra, California.

7. THE ONE INVESTMENTS, LLC is a California limited liability company with its principal place of business in Covina, California.

8. GE PROPERTY MANAGEMENT, INC. is a California corporation with its principal place of business located in Alhambra, California.

9. KEY WEST FINANCIAL SERVICES, INC. is a California corporation with its principal place of business located in San Gabriel, California.

10. A unity of interest and ownership exists between all of Defendants, and between Defendants and their individual representatives such that the separate

identities of the corporations and the individuals no longer exist and, if the acts of the entities are treated as those of the entities' alone, an inequitable result will follow. Among other things, publicly filed records demonstrate that Defendants have overlapping members, officers, and agents for service, and Defendants operate out of the same business addresses. The investment documents at issue, described below, also make clear that Defendants transact business with related entities, including by loaning and borrowing money from one another. Defendant Richgroup Investment, L.P. was established as a mere shell or instrument for a single business venture and, as such, Plaintiff believes it is likely undercapitalized and is explicitly being used to shield other Defendants and individuals from liability.

11. Plaintiff is informed and believes and thereon alleges that, at all relevant times, each of the Defendants was the agent or employee of each of the remaining Defendants and, in doing the things alleged, was acting within the scope of that agency or employment.

12. Plaintiff is informed and believes and thereon allege that, at all relevant times, each of the Defendants was the aider and abettor of one or more of the remaining Defendants through their instigation, encouragement, or assistance.

**INTRODUCTION**

13. Plaintiff is a foreign national who has become the victim of a breach of contract and misrepresentations by business entities with conflicts of interest in a real estate development project. Defendants are all primarily based in California and have misrepresented and taken advantage of Chinese nationals, including Plaintiff, who wish to leave China and provide their families with permanent residency opportunities in the United States through the Employment Based Fifth ("EB-5") program.

**Overview of the EB-5 Program**

14. The Immigration and Nationality Act ("INA") sets aside visas to qualified foreign nationals who contribute to the economic growth of the United States by investing in U.S. businesses and creating jobs for U.S. workers. In 1990, Congress created the Immigrant Investor Program, commonly known as "EB-5," in order to contribute to the U.S. economy through job creation and capital investment from immigrant investors by creating a new commercial enterprise ("NCE") or investing in a troubled business. 8 U.S.C. § 1153, "Allocation of immigration visas," controls the preference allocation for employment-based immigrants. Section 1153(b)(5), "Employment Creation," defines the EB-5 visa program. Part G ("Investors") of the published Volume 6 ("Immigrants") of the USCIS Policy Manual describes the specific rules applicable to the EB-5 program.

15. The INA authorizes approximately 10,000 EB-5 immigrant visas annually. At the time Plaintiff made her investment, the required minimum investment amounts were either $1,000,000 or $500,000, depending on the type of investment (as described more fully below). As of November 21, 2019, the investment amounts have been raised to $1,800,000 and $900,000, respectively.

16. To encourage investment in businesses located in areas that would most benefit from employment creation, there is a set aside of at least 3,000 of the approximately 10,000 EB-5 visas annually for those who invest in NCE's that create employment in targeted employment areas ("TEAs"), which include rural areas and areas with high unemployment. If an investment is made in a TEA, then it qualifies for the lower investment amount (currently $900,000, and at the time of Plaintiff's investment $500,000).

17. There are two traditional paths for an EB-5 investor and their family to obtain permanent residency: the original direct path and the Regional Center path. Both require an investment of either amount into a NCE located within the United States. The investor must invest his or her own capital and that capital must

be lawfully obtained. The immigrant investor must also document the lawful source of funds and the path of funds demonstrating how the investment was made and deposited.

18. Qualifying investments require the investor to actually place their capital contribution "at risk," which means that there must be a risk of loss and a chance for gain. Furthermore, if the investor is guaranteed the right to eventual ownership or use of a particular asset as consideration for the investor's contribution of capital into the NCE, the expected present value of the guaranteed ownership or use of such asset counts against the total amount of the investor's capital contribution in determining how much money was placed "at risk."

19. As part of the petition process, the investor must show that there is an actual undertaking of business activity. The mere act of forming or funding a NCE would be insufficient to show that an immigrant investor has placed his or her capital "at risk." As such, the investor must show actual business activity that shows the "at risk" nature of the investment.

20. The capital investment proceeds must be made available to the job creating enterprises ("JCEs") responsible for creating the employment upon which the petition is based. In the most popular model, the Regional Center path, the investor must show an investment in the NCE and, additionally, that the funds are or will be made available to the JCE.

21. The investment, through the loan or investment of the NCE to a JCE (or NCE itself), must create or preserve ten full-time jobs for qualifying U.S. workers within two years (or within a reasonable time after the two-year period) of the immigrant investor's admission to the United States as a Conditional Permanent Resident. "Full-time employment" is defined as employment of a qualifying employee by the NCE in a position that requires a minimum of thirty-five working hours per week. A "qualifying employee" must be a U.S. citizen, a lawfully admitted permanent resident, or other immigrant lawfully authorized for

employment in the United States including but not limited to a conditional resident, a temporary resident, an asylee, a refugee, or a foreign national remaining in the United States under suspension of deportation. The investor, immediate family member, or any non-immigrant will not count towards the definition of qualifying employee.

22. The Regional Center path is the most commonly opted for path for EB-5 investors, such as Plaintiff. It is a common and popular choice for investors because "full-time employment" can include employment of a qualifying employee in a position that has been created "indirectly" or induced from investments associated with the program. Indirectly created jobs are those created outside, collaterally, or as a result of capital invested in the NCE/JCE sponsored by the Regional Center (a ripple effect on the economy). In order to demonstrate this, EB-5 business plans rely on economists to produce a job creation report that uses USCIS accepted methods and analyzes the expenditures, investment, geographical area, NAICS codes, etc. to determine how many indirect jobs are created as a result of the project.

23. Regional Centers are companies that are an economic unit, public or private, which are involved with the promotion of economic growth, improved regional productivity, job creation, and increased domestic capital investment. In order to obtain Regional Center ("RC") designation, the organizers must show: (1) how the RC plans to focus on a geographical region within the United States, and must explain how the RC will achieve economic growth within this regional area; (2) that the RC's business plan can be relied upon as a viable business model; (3) how, in verifiable detail (using economic models in most instances), jobs will be created directly or indirectly through capital investments made in accordance with the RC's business plan; and (4) the amount and source of capital committed to the project and the promotional efforts made and planned for the business project.

24. To obtain Lawful Permanent Residence ("LPR"), an investor must submit and have approved a Form I-526 petition. The current estimated adjudication time for a Form I-526 is twenty-nine to forty-four months, however, in reality it often takes much longer. Furthermore, USCIS has announced that it intends to review I-526 petitions first for those investors who are currently eligible for a visa to be issued. In other words, those investors like Plaintiff who are from countries with backlogs should expect the adjudication of their I-526 to take longer. Once the Form I-526 is approved, the investor either seeks to adjust status (I-485) or goes through consular processing to obtain their LPR. In order to do this, a visa must be available to them at the time. When Plaintiff in this case submitted her application, there was a known wait time for visas to become available, but it was not as long as currently expected. Given the popularity of the program, should Plaintiff wish to re-apply at this point, she may be looking at a ten to fourteen year wait period for a visa to become available to her. After this, the LPR period is 2 years. After 21 months, the investor and derivative family members must submit a Form I-829 requesting USCIS remove the conditions of the LPR. In order to get approved, they must show that the investment was at risk and the anticipated jobs were created. The current processing times for a Form I-829 is approximately twenty-one to forty-seven months.

## The Investment And Project

25. Plaintiff's husband, Mr. Feng Li was introduced to Jin 'Tony' Zeng ("Zeng"), a member of Defendant 168 America Regional Center, LLC, which is a member of the general partner of Defendant Richgroup Investment, L.P. Plaintiff's husband met with the company twice and met with Zeng a couple of times. Zeng even flew to China to meet with and solicit investments from Chinese investors, including the Plaintiff. Zeng was representing and soliciting investment in Defendant The One Investments, LLC via the investment in Defendant Richgroup Investment, L.P.

26. Defendant The One Investments, LLC is the owner and developer of a mixed-use commercial and residential construction project located in San Gabriel, California. Defendant The One Investments, LLC sought up to $40,000,000 in EB-5 investment through a loan from Defendant Richgroup Investment, L.P.

27. Based on the Business Plan provided to Plaintiff with the Private Placement Memorandum, the project was supposed to be completed with all construction and development activities by 2019. The project, however, has not been completed and, as of June 2020, appears far from being completed. It apparently has not even begun framing and is currently nothing more than a hole in the ground.

28. The ownership of Defendant Richgroup Investment, L.P. is comprised of Foreign EB-5 investors and Defendant The One Asset Management, LLC.

29. Richgroup Investment, L.P. was formed by the Defendants solely for the purpose of raising EB-5 capital and loaning that capital to The One Investments, LLC.

30. The One Asset Management, LLC is the owner/general partner of Defendant Richgroup Investment, L.P. Its ownership is comprised of Defendant 168 American Regional Center, LLC, Defendant Key West Financial Services, Inc., and Defendant GE Property Management, Inc.

31. It is believed the ownership of Defendant The One Investments, LLC is comprised of Jin Zeng, Yvonne Yiu, Alice Yuen-Ching Man, and W&F Investments, LLC. Publicly filed documents indicate that Jin Zeng is the managing member of The One Investments, LLC. Jin Zeng is also an owner of Defendant 168 America Regional Center, LLC. Yvonne Yiu is an owner of Key West Financial Services, Inc. Both 168 America Regional Center, LLC and Key West Financial Services, Inc. are members and owners of the General Partner of Defendant Richgroup Investment, L.P.

32. Plaintiff, relying on the representations of Defendants in the Richgroup, L.P. Private Placement Memorandum that Plaintiff would be returned her capital timely if her I-526 was denied, as well as similar oral representations made to her and her husband by representatives of The One Investments, LLC, including by Jin Zeng, decided to make her qualifying EB-5 investment in Defendant Richgroup Investment, L.P.

33. On July 26, 2016, Plaintiff made an investment of $500,000 and purchased an interest in Richgroup Investment, L.P. by causing $500,000 to be deposited into Defendant Richgroup Investment L.P.'s Royal Business Bank account. Plaintiff did so with the belief that her investment was made into a project that would qualify her for approval of a Form I-526 petition and she would be able to obtain permanent residency in the United States. Plaintiff also did so with the belief, based on representations made in the written Private Placement Memorandum that in the event her I-526 was denied, her capital investment of $500,000 would be returned to her within 90 days' notice of the denial.

34. In addition, Plaintiff paid an administrative fee to Defendant Richgroup Investment, L.P. of $50,000 on July 26, 2016, by causing $50,000 to be deposited into the Royal Business Bank account of Richgroup Investment, LP.

35. As noted above, Plaintiff was provided with a Private Placement Memorandum that, among other things, described the project, the investment strategy, and what would occur in the event Plaintiff's I-526 was denied by USCIS.

36. On July 26, 2016, Plaintiff and Defendant Richgroup Investment L.P. both executed the Subscription Agreement. The Subscription Agreement verified Plaintiff's purchase of units/securities in Richgroup Investment "in accordance with the terms set forth in the Company's Private Place Memorandum dated October 31, 2015."

37. Page 40 of the Private Placement Memorandum provided to Plaintiff states the following:

"An Investor who has been accepted by the Company will become a limited partner immediately upon acceptance by the Company of the Investor's Subscription Agreement, Investor Suitability Questionnaire, and Countersignature Page, regardless of the status of the Investor's I-526 Petition.

If Investor's I-526 Petition or Form I-485 is not approved, the Investor will have the right, but not the obligation, to file an appeal. The costs of any appeals will be borne solely by the Investor. **If the Investor elects not to appeal any denial of the Investor's immigration applications, or the Investor's appeal is denied, notwithstanding the Investor's good faith best efforts in compliance with the Subscription Agreement and related documents and the USCIS rules, regulations and procedures, the Investor shall receive a full refund of the amount of its capital contribution without interest.** [emphasis added] The Administrative Fee less amounts previous expended for any costs incurred by the General Partner and third party disbursements will be returned to the Investor A full refund of an Investor's capital contribution and partial refund of the Administrative Fee will be paid within ninety (90) days after receipt of written notification that the Investor's above petition/application appeal has been denied."

38. On September 23, 2016, Plaintiff filed a Form I-526 with USCIS.

39. On June 6, 2018, Plaintiff received a Notice of Intent to Deny the Form I-526 from USCIS. The basis and reasons for the Notice of Intent to Deny were all based on the project not meeting the EB-5 requirements for job creation, failure to include a comprehensive *Matter of Ho* Business Plan, and because the project was not adequately placing the investment capital "at-risk."

40. Plaintiff's immigration counsel responded to the Notice of Intent to Deny on June 18, 2018 with updated exhibits provided by the developer and associated companies (i.e., the Defendants).

41. On November 14, 2018, USCIS denied Plaintiff's Form I-526 for the above stated reasons.

42. Defendants were notified thereafter of the denial and tried to convince Plaintiff to appeal but Plaintiff, as was her right, chose not to.

43. Furthermore, on January 29, 2020 and February 14, 2020, Plaintiff, through her counsel, notified Defendants Richgroup Investment, L.P. and 168 American Regional Center, LLC, and Yvonne Yiu and Jing Zeng (Tony Zeng) of the Denial. In the same correspondence, Plaintiff also demanded the return of her $500,000 capital investment and the administrative fee less any fees or costs expended by the General Partner, as well as a full accounting of the use of her $500,000 capital investment to-date and an accounting of the project, consistent with the terms of her investment.

44. As of the filing of this Complaint, Defendants have failed to return to Plaintiff her $500,000 capital investment.

45. As of the filing of this Complaint, Defendants have failed to return to Plaintiff her $50,000 administrative fee less costs.

46. As of the filing of this Complaint, Defendants have failed to respond or communicate in any way with Plaintiff's counsel and have not provided to Plaintiff a detailed accounting of the use of funds.

47. As such, Defendants have beached their contractual obligations.

48. Further, Defendants have breached their fiduciary duties as the General Partner of Richgroup Investment, L.P. and have failed to fulfill their obligations to Plaintiff as a limited partner.

49. Defendants have absconded with Plaintiff's $500,000 in "Capital investment funds," and $50,000 in "administrative fees" by fraudulently inducing Plaintiff to invest in the enterprise created and maintained by Defendants, which Defendants misrepresented would return the money if her I-526 was denied.

50. Defendants orally and in writing represented to Plaintiff and her husband that her investment capital would be returned to her in the event her I-526 was denied.

51. Defendants have not responded to Plaintiff's requests for accounting pursuant to her right as a limited partner.

52. The above-named Defendants created, owned, operated, and managed the companies listed throughout that have been used to defraud Plaintiff. Defendants misrepresented to Plaintiff they would zealously represent her, would act in good faith, and would fulfill their fiduciary duties.

53. Defendants materially misrepresented to Plaintiff, among other things, that Plaintiff's investment funds and fees would be refunded in the event her I-526 petition was denied

54. Defendants' misrepresentations and concealments were substantial factors in Plaintiff's decision to pay Defendants $500,000 in capital investment funds, plus $50,000 in administrative fees. All Defendants shared in the financial gain of the misrepresentations.

**First Claim for Relief – Breach of Contract (As to All Defendants)**

55. Plaintiff adopts and re-alleges the allegations set forth in paragraphs 1 through 54 as if fully stated fully herein.

56. The Private Placement Memorandum offered to Plaintiff created an enforceable contract.

57. Plaintiff performed all of the terms of the contract by making the payments of $500,000 in capital investment funds and $50,000 in administrative fees to Defendant Richgroup Investment, L.P.

58. Defendant Richgroup Investment, L.P. breached the contract by, among other things, failing to return Plaintiff's capital investment and administrative fees after being informed of the denial of her Form I-526 by USCIS.

59. Defendant Richgroup Investment, L.P. breached the contract by, among other things, failing to provide and permit the inspection of the books and records of the company.

60. This breach has caused Plaintiff damages in an amount to be determined at trial, but no less than $550,000.

**Second Claim for Relief – Violations of the Securities & Exchange Act of 1934 and 17 C.F.R. 240.10b-5 (As to All Defendants)**

61. Plaintiff adopts and re-alleges the allegations set forth in paragraphs 1 through 60 as if fully stated fully herein.

62. Defendants carried out a plan and course of conduct that was intended to, and did, deceive Plaintiff, and caused Plaintiff to purchase securities.

63. Defendants employed devices, schemes, and artifices to defraud Plaintiff. Specifically, Defendants made untrue statements of material facts, including by representing, both in the Private Placement Memorandum that Plaintiff's investment funds and fees would be refunded in the event her I-526 petition was denied. Defendants engaged in acts, practices, and a course of business which operated to defraud and deceive Plaintiff, the purchaser of the securities.

64. Defendants have violated Section 10(b) of the Exchange Act 15 USC § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages in connection with her respective purchases of a security in an offering sponsored and run by Defendants Richgroup Investment, L.P., The One Asset Management, LLC, 168 American Regional Center, LLC, Defendant Key West Financial Services, Inc., and Defendant GE Property Management.

**Third Claim for Relief – Negligent Misrepresentation (As to All Defendants)**

65. Plaintiff adopts and re-alleges the allegations set forth in paragraphs 1 through 64 as if fully stated fully herein.

66. Defendants materially misrepresented to Plaintiff, among other things, that Plaintiff's investment funds and fees would be refunded in the event her I-526 petition was denied.

67. Defendants' representations were not true.

68. Defendants intended that Plaintiff rely on the representations.

69. Plaintiff reasonably relied on Defendants' misrepresentations.

70. Plaintiff was harmed thereby, and Defendants' concealment was a substantial factor in causing Plaintiff's harm.

71. Plaintiff's reliance on Defendants' misrepresentations was a substantial factor in causing Plaintiff to make her investments and pay her money to Defendants and to Defendants' entities.

**Fourth Claim for Relief – Breach of Fiduciary Duty (As to All Defendants)**

72. Plaintiff adopts and re-alleges the allegations set forth in paragraphs 1 through 71 as if fully stated fully herein.

73. Defendants Richgroup Investment, L.P., The One Asset Management, LLC, 168 American Regional Center, LLC, Key West Financial Services, Inc., and GE Property Management owed Plaintiff a fiduciary duty which imposed upon them the highest standard of scrupulous care and loyalty under the law. Defendants were required to act in Plaintiff's best interests and to refrain from doing anything that would injure or deprive her of profit or advantage.

74. Defendants' actions, including their failure to communicate with Plaintiff, failure to return her capital contributions, and failure to provide her with a complete accounting of her investment, constitute repeated knowing and intentional breaches of the fiduciary duties owed to Plaintiff by Defendants.

75. This breach has caused Plaintiff damages in an amount to be determined at trial, but no less than $550,000, as well as emotional distress damages caused by Defendants' conduct and exemplary or punitive damages according to proof.

## **PRAYER FOR RELIEF**

Plaintiff prays for relief as follows:

1.  For an expedited and immediate accounting of the books and records of Defendants, specifically Defendants Richgroup Investment, L.P., The One Asset Management, LLC, and The One Investments, LLC.

2.  For a preliminary injunction restraining Defendants, relatives, family members, servants, employees and attorneys, and those persons in active concert or participation with them or who have received or retained any of the EB-5 loan or other project revenue, equity, or indebtedness proceeds who receive actual notice of the injunction from disposing of or using the EB-5 funds or other project proceeds, revenue, equity, or other sourced project indebtedness proceeds until otherwise authorized by this Court

3.  For judgment against all Defendants, for damages, punitive damages, costs, interest, prejudgment interest, and such other and further relief which is necessary and just in the circumstances as a result of the Defendants' wrongful acts For general damages and punitive damages against Defendants in an amount to be determined at trial and specific damages of $550,000 (the $500,000 capital investment and $50,000 administrative fee), injunctive relief, interest, cost, attorneys' fees, and such other relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL - WAIVED**

Plaintiff hereby waives her right to a trial by jury.

DATED: July 21, 2020          MAINSTAY LAW, LLC
                              LAW OFFICES OF MICHAEL S. MAGNUSON

                              By:  /s/ Michael S. Magnuson
                                   Michael S. Magnuson
                                   Attorneys for Plaintiff